**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOÏC PAILLOTIN,<br>41 Rue Jean Bleuzen<br>Vanves 92170, France<br><br>        Plaintiff,<br><br>        v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA<br>751 Broad Street<br>Newark, NJ 07102<br><br>and<br><br>AUTOMATIC DATA PROCESSING, INC.<br>FLEX 2000 PLAN<br>One ADP Boulevard<br>Mail Stop 433<br>Roseland, NJ 07068-1728,<br><br>        Defendants. | Case No. |

**COMPLAINT**

Plaintiff Loïc Paillotin, through his undersigned counsel and for his complaint against Defendants The Prudential Insurance Company of America and the Automatic Data Processing, Inc. Flex 2000 Plan, states as follows:

**INTRODUCTION**

1. Plaintiff brings this action pursuant to Section 502(a) of ERISA, 29 U.S.C. § 1132(a), seeking long-term disability ("LTD") benefits due pursuant to the terms of the Automatic Data Processing, Inc. Flex 2000 Plan ("the Plan"), and attorney's fees and costs pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

## THE PARTIES

2. Mr. Paillotin is a disabled resident of Vanves, France and a former United States-based employee of Automatic Data Processing, Inc. ("ADP"). He is presently 40 years old.

3. The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), that provides, among other benefits, long-term disability benefits to eligible plan participants.

4. Mr. Paillotin is, and at all times relevant to this Complaint has been, a participant in the Plan.

5. ADP is the Plan's Sponsor and Administrator as those terms are defined in Section 3 of ERISA, 29 U.S.C. § 1002. ADP maintains its principle place of business in Roseland, New Jersey.

6. At all times relevant to the Complaint, the Plan's LTD benefits were funded through a contract of insurance (DG-17900-DE) ("the Group Contract") ADP purchased from Defendant The Prudential Insurance Company of America ("Prudential"), which is headquartered at 751 Broad Street, Newark, New Jersey 07102. A copy of the Group Contract is appended hereto as Exhibit A.

7. The Group Contract was delivered and accepted in the State of New Jersey and is governed by its laws to the extent that ERISA does not preempt such laws.

8. Prudential contends that it is the Plan's "Claims Administrator" with respect to the Plan's LTD benefits and is the entity responsible for adjudicating and paying claims for the Plan's LTD benefits.

9. As the entity reputedly responsible for adjudicating claims for Plan benefits and paying those benefits, Prudential is a Plan fiduciary that operates under an inherent conflict of interest as a matter of law.

10. ADP, as the Plan's Administrator, is a fiduciary pursuant to Section 2 of ERISA, 29 U.S.C. § 1002.

## JURISDICTION AND VENUE

11. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

12. At all relevant times, the Plan was and is administered in the District of New Jersey. Venue is thus proper in the United States District Court for the District of New Jersey. 29 U.S.C. § 1132(e)(2).

13. The Court has personal jurisdiction over Defendants as the Plan is administered in this District and Vicinage, and Defendants regularly transact business in this District and Vicinage.

14. Section 503 of ERISA, 29 U.S.C. § 1133, provides a mechanism for administrative or internal appeals of benefit claim denials. Those avenues of appeal have been exhausted.

## THE PLAN AND FACTUAL BACKRGOUND

15. For eligible participants such as Mr. Paillotin, the Group Contract provides LTD benefits in the form of a monthly benefit that is 60% of the monthly earnings of the employee, but no more than $10,000.00 as the maximum monthly benefit. Exhibit A at LP000040.

16. In order to receive LTD benefits, a Plan participant must, *inter alia*, satisfy the Group Contract's definition of Disabled.

17. According to the Plan, "disabled" means that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury. ***After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience***.

*Id.* at LP000049 (emphasis added).

18. The Group Contract defines "Gainful occupation" as "an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work." *Id.*

19. "Indexed monthly earnings" "means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same but will never decrease." *Id.* at LP000050.

20. Mr. Paillotin is a French citizen who moved to the United States to work after completing his education.

21. ADP hired Mr. Paillotin as a Software Engineer on November 2, 2009. He worked in Seattle, Washington.

22. Mr. Paillotin worked his last day for ADP on March 8, 2011. That same day, he visited his primary care physician, bloodwork was taken, and Mr. Paillotin's white blood cell count was 22,000 with 35% unclassified cells. He was sent to the hospital for treatment.

23. Mr. Paillotin was subsequently diagnosed with Leukemia.

24. Mr. Paillotin received short-term disability benefits under the Plan from March 9, 2011, through September 4, 2011, the maximum STD benefit period.

25. Prudential received Mr. Paillotin's claim for LTD benefits in July 2011.

26. Prudential approved Mr. Paillotin's claim for LTD benefits in September 2011 with an effective date of September 5, 2011.

27. On October 5, 2011, Mr. Paillotin applied for Social Security Disability benefits ("SSDI"), but his SSDI claim was denied because he had not worked long enough in the United States.

28. Mr. Paillotin's Leukemia ultimately went into remission, but the treatment he received caused significant long-term damage to his health, including, but not limited to, graft versus host disease ("GVHD"), damage to his adrenal glands, corticoid insufficiency, hypogonadism, sleep problems, and long-term opiate dependence.

29. Mr. Paillotin continued receiving LTD benefits for more than 24 months, after which time Prudential determined that he was disabled from any gainful occupation for which he was reasonably fitted by education, training or experience.

30. Prudential terminated Mr. Paillotin's LTD benefits for the first time in a letter dated June 12, 2014.

31. On August 21, 2014, Mr. Paillotin appealed the 2014 termination of his LTD benefits.

32. In or about September 2014, Mr. Paillotin moved back to France, where he remains today.

33. Prudential overturned its initial termination of his benefits and reinstated them as of June 1, 2014 after finding that he remained disabled from any gainful occupation for which he was reasonably fitted by education, training or experience.

34. Mr. Paillotin continued to remain disabled and continued receiving LTD benefits from Prudential from June 1, 2014 through 2017.

35. In February 2018, Jeff Carroll, a Prudential representative, noted in Mr. Paillotin's claim file: "The claimant's condition is unlikely to improve further. Recommend transferring the claim to MCT, following up for monthly payroll records." "MCT" is believed to mean "Mature Claim Team."

36. Mr. Paillotin continued to remain disabled due to his multiple conditions through 2018 and into 2019, and he continued to receive LTD benefits from Prudential. His condition had not materially improved or changed.

37. In a letter dated April 29, 2019, Mr. Carroll notified Mr. Paillotin that Prudential had once again terminated his LTD benefits as of May 1, 2019 as it suddenly claimed that he was no longer disabled under the terms of the Plan.

38. Mr. Paillotin continued to remain disabled under the terms of the Plan and his treating healthcare providers in France repeatedly opined that he experienced significant limitations resulting from his cancer treatment.

39. For example, Dr. Louise Nutte, Mr. Paillotin's general medicine practitioner, wrote a letter dated May 22, 2019:

> This patient presents adrenal insufficiency with a negative ACTH stimulation test. This adrenal insufficiency is subsequent to high doses of corticosteroids, which were administered during the treatment of acute leukemia and a bone marrow graft. Two years ago, he presented a Cushing syndrome, which improved following the decrease of corticosteroids. He currently presents a picture more in favor of hypocorticism with fatigue, asthenia, muscular atrophy, frequent low blood

6

pressure and significant weight loss; he weighs 69 kg today with blood pressure at 100/80 mmHg. He also presents chronic, disabling pain, subsequent to the graft and anti-rejection medication. This pain was treated at a center specializing in pain management. He is currently on Methadone. These treatments caused significant fatigue and excessive daytime drowsiness with a significant need for sleep (12 hours per day at this time). His state of health seems to be incompatible with his resuming any professional activities, even part time.

40. Mr. Paillotin's other treating healthcare providers rendered additional opinions consistent with the opinion of Dr. Nutte. For example, on June 10, 2019, Dr. Marie-Hélène Gillion, an occupational physician, wrote:

I, a physician with Work Safety, hereby certify that Mr. Loïc Paillotin works as a web developer on a modified position: 30% of his work time and the last two days working at a distance, from home. His morning asthenia prevents him from working before 2:00 p.m. His fatigability hinders his concentration in late afternoon and he experiences episodes of excessive daytime drowsiness. His physical condition does not seem compatible with an increase in working hours at this time.

41. Mr. Paillotin initially appealed Prudential's 2019 denial of his claim on June 14, 2019.

42. Prudential denied that initial appeal by way of a letter dated July 24, 2019.

43. Mr. Paillotin submitted a timely second level appeal of the denial of his claim on January 31, 2020.

44. Prudential denied the second appeal by way of a letter dated April 3, 2020.

45. Mr. Paillotin has exhausted his internal appeals under the terms of the Plan.

**CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(a)(1)(B)**

46. Mr. Paillotin repeats, reaffirms, and realleges paragraphs 1 through 45 of the Complaint as if they were fully restated at length herein.

47. Mr. Paillotin has exhausted his administrative remedies under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

48. Mr. Paillotin was and is disabled from any gainful occupation for which he was reasonably fitted by education, training or experience.

49. The denial of Mr. Paillotin's claim for benefits was contrary to the terms of the Plan, incorrect, and an abuse of discretion.

50. Prudential failed to provide Mr. Paillotin with a full and fair review of his claim in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1.

51. Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

52. As a result of Prudential's denial of Mr. Paillotin's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Mr. Paillotin to a declaration of rights clarifying the benefits to which he is entitled under the Plan.

WHEREFORE, Mr. Paillotin prays the Court grant him the following relief with respect to his Complaint:

  a. That the Court enter judgment in favor of Plaintiff and against Defendants, and award him all past due LTD benefits with interest;

  b. That the Court order Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

  c. That the Court reinstate Plaintiff's LTD benefits prospectively subject to the terms of the Plan;

    d.  That the Court award Plaintiff his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendants; and

    e.  That Plaintiff recovers any and all other relief to which he may be entitled

Respectfully submitted,

       /s/ Adam H. Garner
Adam Harrison Garner
Melanie J. Garner
The Garner Firm, Ltd.
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 645-5955 (Tel)
(215) 645-5960 (Fax)
adam@garnerltd.com
melanie@garnerltd.com
*Attorneys for Plaintiff*

Dated: April 7, 2020